**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **ARGONAUT GREAT CENTRAL** ] | |
| **INSURANCE COMPANY**, ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **v.** ] | **CV-08-BE-01223-NE** |
| ] | |
| **PAUL MITCHELL, et al.,** ] | |
| ] | |
| **Defendants.** ] | |

**MEMORANDUM OPINION**

This declaratory judgment action involves a question of insurance law and comes before the court on the Report and Recommendation from Magistrate Judge Armstrong. (Doc. 46).  He recommended denying the motions for summary judgment filed by both sides because "a conflict of a material fact . . . prevents granting a summary judgment to either party."  Both sides filed objections to the Report.  (Docs. 47, 48).  The case was then reassigned to this judge.  The court held a hearing on this matter on March 8, 2011.  For the reasons stated on the Record and summarized below, the court accepts in part and rejects in part the Report and Recommendation, and finds that Plaintiff Argonaut Great Central Insurance Company's Motion for Summary Judgment (doc. 41) is due to be DENIED and the Motion for Summary Judgment filed by Defendants Free Mitchell and Paul Mitchell (doc. 38) is due to be GRANTED.

The only issue presented in this case is whether Defendants' decedent Scott Mitchell was "occupying" the Argonaut-insured Madison County Sanitation Department truck at the time he was killed.  If so, he was an "insured" under Argonaut's policy; if he was not "occupying" the

insured truck, then no coverage applies.

The Magistrate Judge recommended denying both motions because he recognized the existence of genuine issues of material fact.  Indeed, Argonaut's Objection challenges many of the facts set out in the Report, illustrating the disputed nature of certain facts.  Of course, both Argonaut and the Mitchells represented that *no* genuine issue of material facts existed when they filed their motions for summary judgment.  *See* Docs. 38, 41.  As discussed below, the facts the parties dispute are not material to the resolution of the issue in this case and the court finds that the parties do not dispute the truly material facts.  Mere disagreement between the parties concerning the facts does not defeat summary judgment unless disagreement presents a genuine issue of *material* fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  A dispute raises a genuine issue of fact "only if a reasonable jury considering the evidence presented could find for the nonmoving party."  *Anderson*, 477 U.S. at 248.  Substantive law determines which facts are material and which facts are irrelevant, and "only disputes over facts that might affect the outcome of the suit under governing law will preclude the entry of summary judgment."  477 U.S. at 248; *see also Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010); *Epolito v. Prudential Ins. Co. of Am.*, 737 F. Supp. 2d 1364, 1378 (M.D. Fla. 2010).

Argonaut issued an insurance policy to Madison County that covered its vehicles, including the sanitation truck to which Scott Mitchell was assigned for work on the day of his death.  That policy included $1,000,000.00 of uninsured motorist coverage.[1]  Argonaut claims

---

[1] In their Answer, the Mitchells assert that Argonaut's policy covered 638 vehicles and deny that the uninsured motorist policy coverage is limited to the face amount of $1,000,000.  (Doc. 5, ¶ 9).  However, in their Motion for Summary Judgment, the Mitchells sought only a declaration that Scott Mitchell was an "insured" under the Argonaut policy as a matter of law.  (Doc. 26, at 29).

that because the Defendants cannot establish that Scott Mitchell was in actual physical contact with the truck, he does not qualify as an "insured" under the Uninsured Motorist Coverage section of the policy because he was not "occupying" the truck at the time he was hit by an uninsured motorist.  The Mitchell Defendants contend that Scott Mitchell was occupying the truck and that physical contact is not required to "occupy" the truck.

The court recognizes that neither side has been able to offer definitive testimony as to precisely where Scott Mitchell was when the car driven by Angela Egle struck and killed him. The Report and Recommendation sets forth in detail the facts as presented by both sides in the case, and those facts are adopted as if set out here.  However, much of the purported conflict involves facts *immaterial* to the legal question of whether Scott Mitchell was "occupying" the truck at the time of his death.  Whether a factual dispute is material or immaterial depends on the legal issue to be resolved.  *See Anderson*, 477 U.S. at 248-49.

The Uninsured Motorist Coverage section in the Argonaut policy defines "Insured" to include anyone "occupying" a covered auto.  In turn, the policy defines "occupying" as "in, upon, getting in, on, out or off."  So the question becomes whether Scott Mitchell was killed while "in, upon, getting in, on, out or off" the insured truck.  Because the definition and application of those terms in other cases by the Alabama Supreme Court help evaluate which facts are material to resolution of the question here in this diversity case, the court will first examine applicable Alabama law before addressing the undisputed material facts.

### Applicable Principles of Alabama Law

The Alabama Supreme Court on only two occasions has examined whether someone was

3

"occupying" a vehicle to qualify as an "insured."[2]  In *Lambert v. Coregis Ins. Co.*, the Court examined whether the claimant was "on" or "upon" the insured vehicle.  950 So. 2d 1156 (Ala. 2006).  In *Cook v. Aetna Ins. Co.*, the Court discussed whether the claimant was "getting in" the insured vehicle.  661 So. 2d 1169 (Ala. 1995).  While the facts of both cases are easily distinguishable from the facts here, certain principles gleaned from those cases provide guidance and help to narrow the facts *material* to a resolution of this case.

       1.      <u>Meaning of "Occupying"</u>

First, the Court in both cases examined the same definition of "occupying" as used in the Argonaut policy and found it not ambiguous; the words "in, upon, getting in, on, out or off" should be given their plain and common meanings in the context of "occupying" an insured vehicle as applied to the particular facts of the case.  *See Lambert*, 950 So. 2d at 1162-64; *Cook*, 661 So. 2d at 1173.

In discussing the policy definition of "occupying" in the *Cook* case, the Alabama Supreme Court stated: "Viewed in its context and applied to the facts of this case, the term 'getting in' is plain and unambiguous. . . .  [T]he plain and common meaning of that term ['getting in'] is coming or going into, passing into the interior of—obviously meaning going or moving into.  'Getting into,' we therefore conclude, is an affirmative act or movement to effect an entrance into an automobile."  *Cook*, 661 So. 2d at 1173.

The Court in *Lambert* further added to the understanding of the definition of

_____

[2] In a third case, the Alabama Supreme Court summarily affirmed without an opinion the grant of summary judgment in favor of an insurer.  *Roberts v. American Nat'l Property & Cas. Co.*, 976 So. 2d 1005 (Ala. 2007) (C. J. Cobb dissenting).  Chief Justice Cobb dissented in an opinion in which she discussed both *Cook* and *Lambert*.

"occupying": "'getting' appears to modify the prepositions 'in, on, out or off' in the policy provision defining 'occupying' because the policy could not possibly cover everyone who was 'out' or 'off' the vehicle." 950 So. 2d at 1160 (citations and internal quotation marks omitted). "Getting in" or "getting on" or "getting off" therefore, are not the same as already being "on," "in," or "off" the vehicle.

When interpreting "on" or "upon," the Court found that "the only plain and common meaning of those terms in relation to the term 'occupying' is for 'upon' or 'on' to mean in contact with and supported by the top surface of or in contact with an outer surface." *Lambert*, 950 So. 2d at 1162. However, Alabama has rejected a "rigid requirement of physical contact" to "occupy" the insured vehicle. *Cook*, 661 So. 2d at 1173.

No Alabama case has addressed "getting . . . on, out or off," the critical phrase for determining coverage in this case. However, from the discussion of these cases, the court determines that "getting . . . on, out or off" means "an affirmative act or movement to effect an entrance" onto or off of the insured vehicle, or being in the process of moving "on, out or off" the insured vehicle, although direct physical contact is not required. *See Cook*, 661 So. 2d at 1173.

The word "get" is a verb that takes on various meanings depending on its use; in this case, the word "get" in the sense of "getting in a truck" implicates the intransitive form of "get" meaning "to bring or move oneself," as in "he *got* into the car." Merriam-Webster's Collegiate Dictionary 526 (11th ed. 2007). The "-ing" suffix denotes an "action or process." *Id.* at 642. When added to the intransitive verb "get," therefore, "getting in a truck" suggests the *process* of moving oneself into a truck, something less than already being "in," "on," or "off." So "getting on" or "getting off" requires more than merely approaching the vehicle (*see Cook*, 661 So. 2d at

5

1173), but is less than already being "on" or "off" the vehicle.

Because the Alabama Supreme Court already determined that the definition of "occupying" is not ambiguous, this court certainly agrees in this case.  When the terms of a policy are plain and unambiguous, the construction of those terms and their legal effect become questions of law for the court to decide.  *Nationwide Ins. Co. v. Rhodes*, 870 So. 2d 695, 697 (Ala. 2003) (quoting *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 308-09 (Ala. 1999)).

As Alabama courts have frequently stated, "The interpretation of an insurance contract presents a question of law . . . .  Issues of insurance coverage are therefore properly decided on a motion for summary judgment." *B.D.B. v. State Farm Mut. Auto. Ins. Co.*, 814 So. 2d 877, 879 (Ala. Civ. App. 2001) (citing *Holt v. State Farm Mut. Auto. Ins. Co.*, 507 So. 2d 388 (Ala. 1986) (rejecting Plaintiff's argument that "evidence—regarding material facts—that was subject to conflicting interpretations [made] summary judgment . . . improper.")); *see also Caribbean I Owners' Assoc., Inc. v. Great Am. Ins. Co.*, 600 F. Supp. 2d 1228, 1244-45 (S.D. Ala. 2009) (discussing Alabama law concerning insurance policy construction).  Merely because the parties disagree about the interpretation of the policy language or how that language should be applied to the facts of this case does not mean that genuine issues of *material* fact exist to preclude summary judgment.  *See B.D.B.*, 814 So. 2d at 880.

2.     Factors to Consider

Finding the policy language unambiguous does not mean that application of those terms to a particular set of facts will be an easy task.  Although the *Lambert* and *Cook* cases do not provide extensive guidance for applying the definition of "occupying" to the specific facts of this case, they do provide a framework for understanding how an Alabama court would apply the

6

legal principles of those cases to other facts.  Also, the Alabama Supreme Court noted, "Alabama has not adopted a specific test under which to examine the phrase 'in, upon, getting in, on, out or off' . . . to determine whether a person is 'occupying' a vehicle in the context of the insurance agreement at issue in this case." *Lambert*, 950 So. 2d at 1160.  While the Court did not then specifically adopt a particular test to be used in future cases, it did consider some factors used by other courts in examining the issue and noted:  "The majority of jurisdictions hold that the meaning of the term 'occupying' must be determined on a case-by-case basis, depending on the facts of the accident and the *use of the vehicle, and that there must always be some causal connection between the injuries and the use of the vehicle.*" *Id.* at 1161 (emphasis added).

When determining that the claimants in *Cook* and *Lambert* were not "occupying" the insured vehicles, the Court considered certain factors that distinguish those cases from the present situation yet shed light on which facts may be material.  For example, the Court found that Cook had not completed his approach to the insured vehicle, had not crossed the threshold of the truck's door, *would not have entered the truck when he reached it* because his jacket and lunch box were inside the building on the other side of the truck, and had not taken all steps necessary to get in the truck.  *Cook*, 661 So. 2d at 1173.  Indeed, Cook had never "occupied" the vehicle on the morning of the accident.  *See Roberts*, 976 So. 2d at 1009.  However, the Court did note that "'getting in' or entering a vehicle must be distinguished from approaching the vehicle, as well as from preparing to enter the vehicle. . . ."  *Cook*, 661 So. 2d at 1173.

In determining that Lambert was not "on" or "upon" the vehicle, the Court considered similar factors.  For example, Lambert was seven to nine feet away from the insured vehicle when he was struck, "was not engaged in any activity related to the covered vehicle," and based

his claim of being "on" the vehicle on his momentary contact with its bumper during the accident. *Lambert*, 950 So. 2d at 1162. Most significantly, the Court found "no causal connection between his injuries and the use of the company truck. Lambert was not 'vehicle oriented' at the time the accident occurred because he was not engaged in a transaction essential to the use of the insured vehicle . . . . The insured vehicle had absolutely no involvement, much less essential involvement, in this transaction." 950 So. 2d at 1161.

Although the Alabama Supreme Court has not established a precise test, the discussions in *Lambert* and *Cook* indicate that factors to consider in determining whether someone is "occupying" a vehicle by "getting . . . on, out or off" of it include, among others, the use of the vehicle; whether the person seeking coverage was engaged in any activity related to that use; whether a causal connection exists between the use of the vehicle and the accident; whether the person was vehicle oriented at the time of the accident; what involvement, if any, the insured vehicle had with the accident; and whether the person was in close proximity to the insured vehicle. The material facts thus become facts related to these factors that affect the determination of whether Scott Mitchell was "occupying" the insured truck at the time of the accident.

### Undisputed *Material* Facts

Either in their briefs or at the hearing on March 8, 2011, the parties agreed that the following material facts are undisputed:

Argonaut's Commercial Auto, Business Auto Policy number BA-4613237-01 issued to the Madison County Sanitation Department covered sanitation trucks, including the one on which Scott Mitchell was working the day of his death. The policy included liability and

uninsured motorist coverage for the schedule of insured vehicles owned by the named insured, Madison County Sanitation Department.  (*See* Doc. 1, Ex. A).  The sanitation trucks are specialized trucks equipped with hydraulic lifts, packers, and other equipment designed and used for collecting garbage from cans along city streets, and are not passenger vehicles.

Scott Mitchell's employment with the Madison County Sanitation Department required that he ride on the back of the truck, and that he get off and on the truck at the various stops to assist the hydraulic lift in emptying garbage cans into the truck.  To run the packer, he had to be on the platform on the right rear side of the truck.

On March 14, 2008, before the accident occurred, Scott Mitchell rode on the right rear platform from the prior stop to the stop where the accident occurred.  According to Argonaut's expert, he had been off that platform on the street eight to twelve seconds before the accident and remained within two to three feet of the rear of the truck immediately prior to the accident.  After Ms. Egle's car struck him, he was lying on his back, face up, on the hood of her car, pinned between the car and the rear of the garbage truck, with both legs partially amputated.  Scott Mitchell was struck from behind and pinned against the right rear platform of the garbage truck, as evidenced by the blood, tissue, and bone on the step of the truck platform.  Six days later, Scott Mitchell died from these injuries.

Although no evidence definitively establishes whether Scott Mitchell was actually touching the truck at the time he was killed, no one disputes that he was facing the truck and was at least in close proximity to it when Ms. Egle's car struck him, pinned him against the truck, and partially severed his legs at different heights.  At the hearing, counsel for Argonaut conceded that Scott Mitchell was in fact in close proximity to the rear platform of the truck where he previously

9

had been riding, and that a causal connection existed between the accident that caused Scott Mitchell's death and his use of the Madison County Sanitation Department truck insured by Argonaut.[3]

Although the parties do not dispute these facts, which the court finds to be the material ones, they do dispute the inferences to be drawn from these facts. Such dispute, however, does not preclude summary judgment as to the interpretation of an insurance policy. *See Rhodes*, 870 So. 2d at 697-98.

### Analysis

Although Argonaut insists that it is entitled to summary judgment because the Defendants cannot prove that Scott Mitchell was in physical contact with the insured truck at the time of the accident, the Alabama Supreme Court rejected "a rigid requirement of physical contact." *Cook*, 661 So. 2d at 1173. Instead, whether someone is "occupying" a vehicle "must be determined on a case-by-case basis, depending on the facts of the accident and the *use of the vehicle*, and . . . there must always be *some causal connection* between the injuries and the use of the vehicle." *Lambert*, 950 So. 2d at 1161 (emphasis added).

As did the Alabama Supreme Court in *Lambert* and *Cook*, the court examines the undisputed material facts to determine whether, under the facts of the accident and the use of the insured vehicle, Scott Mitchell was "occupying" the sanitation truck at the time of the accident. Relevant to that determination are the intended use of the insured vehicle, whether a causal

---

[3] Counsel did not challenge the court's statement directed to him that "Mr. Mitchell was in close proximity to the rear of the vehicle where he was to be riding on it, that he was engaged in the work that he was hired to do associated with that truck at the time he was injured, that but for what he was doing in relation to the utilization of the truck, he would not have been struck because he wouldn't have been at the rear of that truck at the time Ms. Egle plowed into it."

connection exists between the use of the truck and Scott Mitchell's death, whether he was in close proximity to the vehicle and vehicle oriented, and whether the truck had any involvement with the accident.

 1. Causal Connection

Here, as Argonaut concedes, a causal connection exists between Scott Mitchell's use of the insured vehicle as his place of work and the accident. "But for" his use of the sanitation truck, he would not have been behind it when he was struck, resulting in his death. Thus, the Defendants established that critical factor—causal connection between the injuries and use of the truck—always required to establish that someone was "occupying" the insured vehicle. The causal connection factor seems to be the most significant factor considered by the Alabama Supreme Court in *Lambert*, as well as the factor always required by the majority of jurisdictions. *See Lambert*, 950 So. 2d at 1161 ("The majority of jurisdictions hold that . . . there must always be some causal connection between the injuries and the use of the vehicle." The Court emphasized that, as to the plaintiff, ". . . there was no causal connection between his injuries and the use of the company truck . . . [H]e was not engaged in a transaction essential to the use of the insured vehicle. . . . The insured vehicle had absolutely no involvement, much less essential involvement, in this transaction."). Thus, the court finds a causal connection between Scott Mitchell's use of the sanitation truck and his death.

 2. Intended Use/Transaction Essential to Use

The intended use of the insured vehicle also plays a central role in determining whether someone is "occupying" it. *See Lambert*, 950 So. 2d at 1161 ("[T]he meaning of the term 'occupying' must be determined on a case-by-case basis, depending on the facts of the accident

11

and the *use of the vehicle*, . . . .") (emphasis added).

The Court in *Lambert* found no connection between the use of his employer's truck and Lambert's injuries.  Lambert, a utility company employee, had driven the company truck to a job site around 7:30 a.m. and parked it on the side of the road, where it remained.  Lambert's job that day involved "assisting several other employees in installing a 12-inch water main."  Around 11:00 a.m., Lambert retrieved a water jug from the truck and walked to a nearby spot where he "was waiting for a backhoe operator to finish putting dirt into the trench."  As he was standing about seven to nine feet from the back of the truck, an uninsured motorist who swerved off the road struck him.  He was dragged several feet by the vehicle until he hit the bumper of his company truck.  950 So. 2d at 1157-58.  Thus, Lambert's use of the company truck to transport himself, the water jug, and whatever tools or supplies needed to the job site several hours prior to the accident played no role in the accident.

In contrast, the insured vehicle in this case played a significant and essential role in the accident.  The insured vehicle was a sanitation truck.  Argonaut knew it insured sanitation trucks when it issued its policy to the Madison County Sanitation Department.  Sanitation Department employees ride *in* the cab of the truck and *on* the exterior of the truck.  Workers riding on the exterior of the truck get on and off the truck throughout the course of their work day.  Indeed, their job *requires* them to get off the truck, get cans from the side of the road, load garbage into the truck, operate the packer, get on the truck, ride to the next stop, and get off to do the same activity again and again.  The uncontradicted evidence establishes that Scott Mitchell was using the vehicle in its intended fashion at the time of the accident.  When considering the intended and expected use of the sanitation truck, the term  "occupying" as defined by the policy should be

given a more expansive reading than might apply to another vehicle, such as a passenger car, for example. 950 So. 2d at 1157.

Although no Alabama court has found a causal connection between the use of the insured vehicle and the accident, a closely analogous case involving a tow truck operator provides guidance. The Third Circuit Court of Appeals applied Pennsylvania law to the same definition of "occupying" for uninsured motorist coverage purposes to the claim of a tow truck operator who was injured while in the process of loading a disabled car onto a co-worker's flatbed truck because he could not tow the car with his truck. *Lynn v. Westport Ins. Corp.*, 258 Fed. App'x 438 (3d Cir. 2007). The court applied the following four-part test used in Pennsylvania to determine whether the plaintiff was "occupying" an insured vehicle:

> 1) there is a causal relation or connection between the injury and the use of the insured vehicle;
>
> 2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
>
> 3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
>
> 4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Id.* at 440, (quoting *Utica Mut. Ins. Co. v. Contrisciane*, 473 A.2d 1005, 1008-09 (Pa. 1984)).

The four-part test applied in *Lynn* includes four of the factors the Alabama Supreme Court used in applying the definition of "occupying" in *Lambert* and *Cook*. In finding the plaintiff met that test, the court in *Lynn* noted that

> Lynn was a tow truck driver whose job it was to respond to stranded motorists and . . . the insured vehicle was a tow truck. In

13

> other words, it is part of the duties of a tow truck driver to exit the
> truck and aid the disabled vehicle, and we assume that this
> regularly occurs in an unsafe location such as the side of the
> highway.  Presumably, the insurance company knows that this is
> how the tow truck will be utilized.

258 Fed. App'x at 441.  The court also commented that "Lynn was only away from his tow truck

and walking along the side of the road because of his duties as a tow truck driver."  *Id.* at 442.

Similarly, Scott Mitchell's job required that he get off and on the truck to retrieve garbage

cans from the side of the road.  Doing so regularly placed him in unsafe traffic situations.  He

was only where he was at the time of the accident because his duties as a sanitation worker

required him to be at the back of the insured truck.  Argonaut presumably knew that the

sanitation trucks it agreed to insure would be utilized in this way by the Sanitation Department's

employees.  The insurance policy provides uninsured motorist coverage for those employees

using the insured trucks in the intended and foreseeable ways at the time of an accident.

3.    Vehicle Oriented/Close Proximity

In considering the other factors discussed by the Alabama Supreme Court in *Cook* and

*Lambert*, the court finds that the undisputed material facts show that at the time of the accident

Mitchell was "vehicle oriented" in that he was facing the rear of the truck and was engaged in a

transaction essential to the use of the insured vehicle.  The physical evidence that he was hit from

behind and landed lying face up on the hood of Egle's car establishes his position facing the

truck.  He was engaged in a transaction essential to the use of the garbage truck in that the truck

had stopped to empty the garbage cans at 552 Harvest Road.  According to the resident at that

address, two full garbage cans were at the roadside for pick up that morning, and when he

returned home that afternoon after the accident, one had been emptied but the other can was full.

14

Further, no one disputes that at the time of the accident Scott Mitchell was in close proximity to the right rear platform of the sanitation truck on which he had been riding immediately prior to the stop.

       4.    <u>More Than Approaching</u>

The court recognizes that in *Cook* the Alabama Supreme Court sought to distinguish the act of "getting in" a vehicle from merely approaching a vehicle.  *See* 661 So. 2d at 1173.  In *Cook*, the facts demonstrated that, instead of "getting in" to the insured vehicle, Cook was approaching it and, had he not been struck by a car first, he would have gone *past* the insured vehicle to retrieve his jacket and lunch box from the building on the other side of the vehicle before returning to get in it for his ride to work.  Thus, he was "at most" approaching the vehicle, instead of entering it, when the accident occurred.  *See* 661 So. 2d at 1173.

The court is mindful that more than approaching the truck would be required for Mitchell to be getting on or off it.  The actions of Scott Mitchell prior to the accident contrast significantly with those of Cook and demonstrate that Mitchell was not merely approaching the sanitation truck at the time of the accident.  He had been riding on and working on and around the truck, getting on and off it, doing his job associated with the use of the truck before the accident, and would have continued to do so had he not been hit by an uninsured motorist.  Argonaut's own expert estimated that Scott Mitchell had been off the platform on the rear of the truck eight to twelve *seconds* before he was struck and killed.  He never went more than two to three feet from the rear of the truck from the time it stopped until he was hit.  The court need not decide in this case how far "occupying" a sanitation truck would extend in other contexts because the facts here establish that Mitchell was immediately behind the truck when hit, in close proximity to it,

conducting an essential transaction associated with its use, and but for his use of the truck would not have been killed.

  5. <u>Physical Contact Not Required</u>

  Argonaut insists that the Mitchells have not met their burden of proof that Scott Mitchell was "occupying" the sanitation truck because they cannot prove that he was in actual physical contact with the vehicle.  The court rejects that argument for three reasons.  First, and most important, the Alabama Supreme Court rejected the idea that physical contact must be shown before someone can be "occupying" a vehicle, as that term is defined in the Argonaut policy.  *See Cook*, 661 So. 2d at 1173.

  Second, requiring physical contact negates the word "getting" used by the Argonaut policy to modify "in, on, out or off," at least as applied to "in," "on," and "off."  Giving effect to the words used in the policy definition requires recognition that "getting in, on, out or off" encompasses a *process* and not just the final act of being *in* the truck, or *on* the truck, which would connote actual contact with the truck.

  Third, had Argonaut wanted to limit its uninsured motorist coverage to those occupants who were in actual physical contact with the insured vehicle, it presumably could have done so by including that requirement in its definition of "occupying."[4]  *See, e.g., Tropf v. Am. Family Mut. Ins. Co.*, 558 N.W. 2d 158, 160 (Iowa 1997); *South Carolina Farm Bur. Mut. Ins. Co. v. Kennedy*, 700 S.E. 2d 258, 261-62 (S.C. 2010) (no coverage because policy defined "occupying" as "having actual physical contact with an auto while in, upon, entering or alighting from it.").

---

  [4] Such a limitation, however, would not be effective as to persons who fall within the policy definition of "insured" for automobile liability coverage.  See "Alternative Basis" *infra*.

Absent such requirement in the policy definition, most jurisdictions do not impose a physical

contact requirement on the traditional definition of "occupying" as used in the Argonaut policy.

*See Simpson v. United States Fid. & Guar. Co.*, 562 N.W. 2d 627, 629-30 (Iowa 1997)

(distinguishing *Tropf*, 558 N.W. 2d at 160, and citing 1 Alan Widiss, *Uninsured and*

*Underinsured Motorist Insurance* § 5.2 at 192-98 (2d ed. 1992)).

Taking into account the use of the insured vehicle, the causal connection between that use

and the accident, Scott Mitchell's close proximity to the right rear platform of the truck, his

position facing that platform when he was struck from behind, nothing remained to be completed

in his approach to the truck, and his engagement in a transaction essential to the use of that

vehicle, the court concludes that no reasonable jury considering these undisputed facts would

find that Scott Mitchell was not "occupying" the truck at the time he was fatally injured.  The

fact that no witness can definitively say that he was in actual physical contact with the truck does

not outweigh all the other factors that support a finding that he was "occupying" the sanitation

truck at the time of the accident within the meaning of that term when applied to the vehicles

insured under Argonaut's policy.

### Alternative Basis

An alternative reason exists for finding that Scott Mitchell was an insured under the

Argonaut policy for uninsured motorist coverage.  Although not addressed by the parties,

Alabama courts have recognized that the legislative intent behind the uninsured motorist

coverage statute mandates that such coverage be available to those persons insured under the

*liability* coverage in the policy.  *See Peachtree Cas. Ins. Co. v. Sharpton*, 768 So. 2d 368, 371

(Ala. 2000); *State Farm Auto Ins. Co. v. Reaves*, 292 So. 2d 95, 98-99 (Ala. 1974), *overruled on*

17

*other grounds by State Farm Mut. Auto. Ins. Co. v. Wallace*, 743 So. 2d 448 (Ala. 1999); *see also State Farm Mut. Auto. Ins. Co. v. Jackson*, 757 F.2d 1220, 1223 (11th Cir. 1985).

Alabama law mandates that a motor vehicle liability policy provide coverage not only to the named insured but also to "any other person . . . <u>using any Motor vehicle</u> . . . designated in the policy with the express or implied permission of the named insured . . . ." Ala. Code § 32-7-22 (emphasis added). Automobile liability policies usually specify additional insureds in what is called the "omnibus insured clause," and often include as additional insureds residents or relatives of the named insured, thus extending coverage beyond the mandated permissive user coverage.

Once an insurance policy extends liability coverage to a class of insureds beyond those named in the policy, such as the Argonaut policy here, the Alabama Supreme Court has recognized that "uninsured motorist coverage must be offered to cover the same class of insureds." *Reaves*, 292 So. 2d at 99. As the Court subsequently confirmed, "'*Reaves* stands for the proposition that if a person is insured under the liability coverage provision of a motor vehicle insurance policy and uninsured motorist coverage is not rejected, the uninsured motorist coverage dictated by [Ala. Code] § 32-7-23 cannot be excluded from the policy as to such an insured person.'" *Sharpton*, 768 So. 2d at 371 (quoting *State Farm Mut. Auto. Ins. Co. v. Jackson*, 462 So. 2d 346, 350 (Ala. 1984)). Stated another way, "once an automobile liability policy is issued extending coverage to a certain class of insureds under such [omnibus] clause, uninsured motorist coverage must be offered to cover the same class of insureds." *Alabama Farm Bur. Mut. Cas. Ins. Co. v. Pigott*, 393 So. 2d 1379, 1382 (Ala. 1981).

This requirement reflects the intent of the Legislature when mandating that insurance

18

companies offer uninsured motorist coverage when writing an automobile liability policy.

Alabama Code § 32-7-23(a) reads:

> (a) No automobile liability or motor vehicle liability policy
> insuring against loss resulting from liability imposed by law for
> bodily injury or death . . . arising out of the ownership,
> maintenance or use of a motor vehicle shall be delivered . . . in this
> state . . . unless coverage is provided therein . . . *for the protection
> of persons insured thereunder* who are legally entitled to recover
> damages from owners or operators of uninsured motor vehicles . . .
> provided, that the named insured shall have the right to reject such
> coverage; . . . .

(emphasis added).  In short, the statute requires that uninsured motorist coverage be offered "for

the protection of persons insured thereunder" in the automobile liability policy.  *See, e.g., Reaves*,

95 So.  2d at 98-99.

Under the liability coverage of the Argonaut policy issued to the Madison County

Sanitation Department, an "insured" includes "anyone else while using with your permission a

covered auto you own."  (*See* Doc. 1-4, at 24.)   Although the Mitchells do not reference this

definition, they do argue that Scott Mitchell was using the vehicle at the time of the accident;

Argonaut does not refute that he was using the vehicle, instead relying on its position that Scott

Mitchell was not an insured because he was not in physical contact with the insured vehicle.  The

court finds that under the policy definition, Scott Mitchell would qualify as an insured for the

purpose of liability insurance protection because he was using the truck with the permission of

his employer, the named insured.  That Scott Mitchell was using the truck has previously been

established because he was engaged in a transaction essential to the intended use of it—garbage

collection.

To cover a sanitation department employee for liability insurance purposes when he was

19

using the insured sanitation truck to perform his work but then deny him coverage for personal injuries or death caused by an uninsured motorist while he was using that same truck violates the purpose of the statutory mandate behind uninsured motorist coverage.  *See McKinney v. Nationwide Mut. Fire Ins. Co.*, 33 So. 3d 1203, 1210 (Ala. 2009) (discussing at length public policy of the uninsured motorist statute); *Reaves*, 292 So. 2d at 98-99 (Ala. 1974) (same). Because as discussed above, Scott Mitchell was using the insured sanitation truck as his place of employment and was carrying out his duties associated with that truck, and would qualify as an "insured" for liability coverage, the court concludes that he also qualifies as an insured for uninsured motorist coverage.

For these reasons, Plaintiff's Motion for Summary Judgment is DENIED because, contrary to its argument, neither its policy nor Alabama law requires physical contact for someone to be occupying the insured vehicle.  The Defendants' Motion for Summary Judgment is GRANTED because the undisputed evidence supports a finding as a matter of law that Scott Mitchell was occupying the insured vehicle at the time of the accident.  A separate order will be entered.

DONE and ORDERED this 30th day of March, 2011.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

20